# Tinstman *versus* Croushore.

1. A. having an option to purchase land, assigned his right to B. who was to negotiate the sale thereof and divide the profits with him. A. agreed with C. under seal to transfer the option to him for $13,000 and B. endorsed on the agreement his approval. A. died, and D. his administrator having brought suit against C. to recover the balance due, offered in evidence an agreement between himself as administrator and B. by which the latter assigned his interest in the amount sought to be recovered in the action.as the balance due to plaintiff's intestate. *Held*, that the assignment was admissible to show that the right of action for such balance was exclusively in the plaintiff; though made without notice to the defendant and reciting facts which occurred in the lifetime of A.

2. An administrator, plaintiff in a suit, having testified as to matters occurring since the death of his intestate, cannot be cross-examined as to

[Tinstman *v.* Croushore.]

facts occurring before the death of his intestate; but if called as an adversary under the Act of March 27th 1865 (P. L. 38), may testify as to such facts.

3. In an action by an administrator, an assignor through whose assignment the plaintiff claims, is an incompetent witness for the plaintiff; the Act of April 15th 1869 (P. L. 30), by its proviso, does not apply to any case in which executors, administrators or guardians are parties.

October 4th 1883. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT and GREEN, JJ. PAXSON and CLARK, JJ., absent.

ERROR to the Court of Common Pleas of *Westmoreland county :* Of October and November Term 1883, No. 46.

Debt, by H. Croushore, M. L. Painter and J. B. Blyholder, administrators of the estate of Israel Painter, deceased, against A. O. Tinstman. Pleas, payment with leave, etc., and set-off.

On the trial, before HUNTER, P. J., the following facts appeared : Daniel Felgar owned a tract of land in Westmoreland county, and by agreement dated June 16th 1879, he gave an option to his son William B. Felgar to purchase the same. Israel Painter, the plaintiff's intestate, by agreement with William B. Felgar, dated January 20th 1880 was authorized by the latter to sell a portion thereof. This agreement was not fully set forth in the paper books, but it appeared from the evidence that under it, Felgar and Painter were to divide the profits equally between them. By agreement dated January 28th 1880 Painter agreed to sell, assign and transfer to A. O. Tinstman, the defendant, all his right, title and interest in the said land acquired by him by said agreement with William B. Felgar, the consideration being $13,000, which sum Tinstman thereby agreed to pay. By indorsement upon this agreement, it was confirmed and approved by William B. Felgar.

Painter died July 4th 1880, and this action was brought by his administrators to recover a balance due on the said $13,000. The plaintiffs put in evidence the several agreements above mentioned and then " for the purpose of showing that as to the balance claimed by Israel Painter's administrators in this suit, they have the right to maintain this action, and not to show what the balance is," offered the following instrument :

" Whereas, William B. Felgar and the late Colonel Israel Painter, deceased, by an agreement made between them on the 25th January, 1880, agreed to divide the profits of the sale of Daniel Felgar's coal, over and above the sum of $45,000, equally between them ; and, whereas, the same was sold to A. O. Tinstman for the sum of $58,000, leaving $13,000 as profits, or $6,500 each to the said Painter and Felgar; and, whereas, there still remains due from the said Tinstman, of the said profits,

[Tinstman *v.* Croushore.]

the sum of four thousand six hundred and fifty dollars ($4,650) of which $2,150 is due to said Colonel Israel Painter's estate. Now, this paper witnesseth : That for value received, I do hereby assign to the administrators of the said Painter, to wit, H. Croushore, M. L. Painter and J. B. Blyholder, all my interest and claim in the said sum of $2,150., whether as surviving partner or otherwise, with leave to the said administrators to collect the same from the said A. O. Tinstman in any manner necessary or requisite to be done. Witness my hand and seal this 10th February, 1881.

Wм. B. Felgar. [l.s.] "

Objected to, because it was a transaction between Painter's administrators and Felgar, one of the parties interested in the suit, with which defendant had nothing to do and of which he had no notice ; and because it was offered to fix facts transpiring in the lifetime of Israel Painter, without consulting defendant. Objection overruled and evidence admitted. Exception. (First assignment of error.)

It was proved that title to the land in question had been made to defendant, and that he had paid on account of the $13,000 sufficient to reduce Israel Painter's "share" to $2,150, which defendant objected to paying the plaintiffs after Painter's death, saying that he did not know but that Felgar as surviving partner was entitled to the money. The assignment from Felgar was obtained by the plaintiff to obviate this objection.

The defendant having offered in evidence certain checks, drawn by him to the order of Israel Painter, and having called M. L. Painter as for cross-examination, offered to prove by him that during the period in which the checks were given, covering the time from the making of the agreement in January 1880, until Painter's death, there were no other business transactions between Painter and defendant, in which sums of money like these were passed between them on any account. Objected to. Objection sustained. (Second assignment of error.)

In rebuttal the plaintiff called William B. Felgar and offered to ask him in reference to a check dated March 1st 1880 (put in evidence by the defendant), as to how it was paid to Painter and to whom it was charged up in statements or settlements with Tinstman. Objected to. Objection overruled and offer admitted. Exception. (Third assignment of error.)

Verdict for plaintiff for $2,491.84 and judgment thereon ; whereupon the defendant took this writ of error, assigning for error, inter alia, the admission and rejection of testimony as noted above.

*McCullogh* (with whom was *Markle*), for plaintiff in error. —The assignment by Felgar should not have been admitted merely to show the right of action without being offered to show how much the balance was. It was prepared so that the recitals should make out the plaintiff's case and Felgar be made a competent witness. The objection made by plaintiff's counsel at the trial to the defendant's offer showed no ground on which to refuse it : Gamble *v.* Hepburn, 90 Pa. St. 439. When one of the parties to a transaction is dead the survivors cannot testify to matters that occurred during the lifetime of the deceased : Arthurs *v.* King, 84 Pa. St. 525 : Hoopes *v.* Beale, 90 Pa. St. 82 ; Ewing *v.* Ewing, 96 Pa. St. 381 ; Gray's Executors *v.* Whitney, 32 P. F. S. 332 ; Allum *v.* Carroll, 67 Pa. St. 68 ; Karns *v.* Tanner, 66 Pa. St. 297.

*Head* (with whom was *John F. Wentling* and *Moorhead*), for defendants in error.—Supposing Painter and Felgar to have been partners, Felgar who survived had the right to divide the assets with the administrators of Painter : 2 Lindley on Partnership, 655. M. L. Painter was called by defendant for examination : if as an ordinary witness, the evidence was inadmissible, if under the Act of April 15th 1869, it was incompetent : Bierly's Estate, 32 P. F. Sm. 419 ; Gracey *v.* Lockhart, 30 Pitts. Leg. J. 306 ; Hess *v.* Gourley, 8 Norris 199 ; Taylor *v.* Kelly, 30 P. F. Sm. 97. Felgar was neither a party to the suit nor interested in it : Ferree *v.* Thompson, 2 P. F. Sm. 354 ; Sheetz *v.* Hanbest, 31 P. F. Sm. 102 ; McMurray's Appeal, 13 W. N. C. 186.

The opinion of the court was delivered November 5th 1883, by GREEN, J.

This action was founded upon a contract between Israel Painter and A. O. Tinstman. Painter having died, his administrators brought the suit. They alone were plaintiffs and Tinstman alone was defendant. By the terms of the contract Tinstman was to pay Painter thirteen thousand dollars in consideration of Painter's transfer to Tinstman of all his interest in certain coal and land which had been acquired by Painter from W. B. Felgar, who had acquired the same by agreement of purchase from Daniel Felgar. A large part of the thirteen thousand dollars had been paid by Tinstman to Painter during his life and the plaintiffs, his administrators, after his death. The latter claiming that there was still due a sum of $2,150, brought this action to recover it. It appeared that by an agreement between Painter and W. B. Felgar the sum of thirteen thousand dollars to be paid by Tinstman was to be equally divided between them. When the administrators of

[Tintsman *v.* Croushore.]

Painter demanded the balance of $2,150 from Tinstman, he did not pay them, alleging that he was in doubt whether he ought not to pay it to W. B. Felgar. Thereupon Felgar executed a paper in which he assigned to Painter's administrators all interest in the said sum of $2,150 with leave to the administrators to collect the money. On the trial the plaintiffs offered this assignment, which was in writing and under seal, in evidence. The defendant objected to it, because it was a transaction between the plaintiff and Felgar of which the defendant had no notice, and also because it was offered to establish facts transpiring in Painter's lifetime, without consulting the defendant. The court admitted the evidence and this is assigned for error. It is difficult to understand why this paper was not proper evidence. It was not the testimony of a living witness, whose competency was questionable, but a fact, an instrument of writing. It was certainly relevant, as it removed an objection which the defendant had made to paying the money to the plaintiffs. It was not offered to prove the recital of facts which it contained, but simply as proof that whatever interest Felgar had or might have in this particular sum of money was transferred to the plaintiffs. It was clearly competent, and the first assignment therefore is not sustained.

There is no merit in the second assignment. The witness, one of the plaintiffs, was called to prove matters occurring after the death of his intestate. It was then proposed to cross-examine him as to matters which occurred before Colonel Painter's death. That this could not be done was expressly ruled in Bierly's Est., 32 P. F. S. 419. The right to cross examine an adversary is conferred by the second section of the Act of 1869, and of course it can only be exercised in the cases which are allowed by that Act. But the Act does not apply in cases where executors or administrators are parties, and this exception applies to the whole Act, to all its sections. Moreover, no harm was done by the rejection of the offer, as the witness was immediately called as an adversary under the Act of 1865, and testified to the very same matters which were offered to be proved on cross-examination.

A more difficult question is presented by the third assignment. Felgar was called as a witness for the plaintiffs, and was allowed to testify to facts which transpired between himself and Colonel Painter, in the lifetime of the latter. Was he competent for that purpose? He was not a party to the record, and he had no interest in the suit. He was not called to testify against the representatives of a deceased party, but was called by them to testify in their favor. The opposite party to the suit was alive, and it was not the case of a dead assignor of a thing or contract in action. The case does not come within

any of the expressed exceptions to the operation of the Act mentioned in the proviso to the Act of 1869. So far as all these objections to his competency are concerned he would not be disqualified. But there is still an objection which seems fatal to his competency. He was the assignor of the thing out of which arose the contract in action. He conveyed to Painter his right to the coal and land purchased by him from his father, and which Painter sold to Tinstman. Prior to the Act of 1869, he would have been incompetent to testify in support of the title which he conveyed to Painter under the long train of decisions which followed : Post *v.* Avery, 5 W. & S. 509 ; although that case would not have excluded him, as his conveyance was not colorable but bona fide. It is not to be questioned, however, that the subsequent decisions excluded all assignors without reference to the good faith of their assignments : Patterson *v.* Reed, 7 W. & S. 144 ; McClelland *v.* Mahon, 1 Barr 364 ; Grayson's Appeal, 5 Barr 395 ; Lindsley *v.* Malone, 11 Harr. 24. But the Act of 1869 abrogated this disqualification when it provided that, " No interest or policy of law shall exclude a party or person from being a witness in any civil proceeding." If Colonel Painter were now alive, and were the plaintiff in this action it is perfectly clear that Felgar would be a competent witness on his behalf. It seems anomalous that he should be incompetent when called on the same side to testify to the same facts, in favor of and not against the interests of the deceased. But the difficulty is that the proviso to the Act declares that the " Act shall not apply to actions by or against executors, administrators or guardians." That is, in cases where these representative persons are parties on either side, the Act has no application whatever, it is the same as if it had never been passed. Hence in all such cases the disqualification arising from public policy which was removed by the enacting clause is restored by the proviso. There seems to be no escape from this conclusion, and we feel obliged therefore to hold that the witness was improperly admitted to testify. It is said in support of the objection to his competency that the defendant's mouth is closed, because the plaintiffs are administrators, and it would be inequitable to allow the witness to testify to matters which occurred in Painter's lifetime when he, the defendant, could not reply. But there is no force in that objection since the same thing could be said against the testimony of any stranger who might happen to have knowledge of the same facts. But the inapplicability of the Act of 1869 in any of its provisions, to the case, is a substantial obstacle to the competency of the witness. This ruling is in accord with our recent decisions, although the precise question has never yet arisen. Thus in Gray's Ex'rs *v.* Whitney, 32

[Tintsman *v.* Croushore.]

P. F. S. 336, we held that one who was interested because he was a vendor of personal property, and therefore a warrantor of the title in question in the case, was incompetent, though not a party, because the Act of 1869 did not apply. It is true he was offered against the interests of the deceased party but he was rejected on the ground that the Act did not apply, because an executor was a party, and the case was thus brought literally within the words of the proviso. In Arthurs *v.* King, 3 Norr. 525, the witness was excluded, in an ejectment for land, but it was on the ground that he was called to testify against a dead former owner of his adversary's title. This case is scarcely authority for the exclusion of Felgar in the case at bar. Hoopes *v.* Beale, 9 Norr. 82, is more in point. There the defendants being offered as witnesses were excluded on the broad ground that the Act did not apply in cases in which administrators were parties. Mr. Justice GORDON, in delivering the opinion said, "It follows that cases falling within the proviso stand just as though the Act of 1869 had never been passed and we need scarcely say that before the passage of that Act, the evidence of these defendants would not have been admissible." Here also however the witnesses were offered against the deceased party's title. In Taylor *v.* Kelly, 30 P. F. S. 95, the witnesses were offered on behalf of the deceased party's representative, and it was conceded they would have been competent had it not been for the operation of the proviso clause. They were excluded by this court distinctly and only on the ground that under the proviso the Act did not apply to the case though by the enacting clause they were made competent. Mr. Justice MERCUR said in the opinion : "We must not overlook the fact that all competency imparted to any witness, by the enacting clause of the 1st section, is entirely taken away by the proviso, in case an executor is a party to the action." And again, "The incompetency of the witnesses in this case, stands as if this Act had never been passed." This case is almost identical with the present. In principle it is entirely so. The only difference is that there the incompetency was on the ground of confidential relation, and here it is on the ground of public policy. The subject matter of the action is money due upon a contract. The whole sum belonged equally to the witness and the deceased. The right to collect it passed by transfer from the witness to the deceased, and in addition to this the witness made a special assignment of all his right to the particular sum of $2,150 claimed in this action, to the plaintiffs as administrators of the deceased. It is perhaps to be regretted that we are obliged to make these decisions which seem to be so contrary to the spirit of the Act of 1869. But the generality of its letter controls us and we must enforce it as we

[Caldwell *v.* Anderson.]

find it written. The remedy lies with the legislature as we are powerless to give it. Speaking for myself only, I have to say, that in my judgment it is much to be desired that there should be a new, a more comprehensive and a more careful and accurate expression of legislative intent upon the whole subject of the competency of witnesses, than we yet have. The third assignment of error is sustained.

　　　Judgment reversed and venire facias de novo awarded.